### MURPHY v. FAY et al.

(Supreme Court, Appellate Division, Second Department. December 28, 1911.)

1. GIFTS (§ 38*)—BANK DEPOSIT—UNDUE INFLUENCE.
    Plaintiff's wife, after refusing to live longer with him, requested shelter from her sister and her sister's daughter, and, being denied, went to the home of defendant, another niece, and resided with her until she was taken to a hospital, where she subsequently died. Several months before she went to the hospital, she accompanied defendant to a savings bank, and transferred to defendant a savings deposit of $1,095.34. At this time, while she was old and in poor health, she was of sound mind. *Held* insufficient to raise a presumption that the gift was the result of undue influence or was without consideration.

    [Ed. Note.—For other cases, see Gifts, Cent. Dig. § 74; Dec. Dig. § 38.*]

2. EXECUTORS AND ADMINISTRATORS (§ 450*)—ACTIONS FOR ASSETS—BURDEN OF PROOF.
    In a suit by an administrator to recover money transferred by his intestate to defendant in her lifetime, the transaction having been fully consummated, defendant was under no obligation to show a consideration for the transfer, but the burden was on plaintiff to prove that it was invalid for some reason.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1858–1876; Dec. Dig. § 450.*]

Appeal from Special Term, Kings County.

Action by Michael J. Murphy, as administrator of Nellie Murphy, deceased, against Mary Fay and another. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, CARR, WOODWARD, THOMAS, and RICH, JJ.

William Van Wyck, for appellant.

Augustus M. Price, for respondent Fay.

WOODWARD, J. The plaintiff, as administrator of Nellie Murphy, deceased, his late wife, demands judgment against defendant Mary Fay, his wife's niece, for the sum of $1,095.34, alleged to have been obtained by undue influence practiced upon the said Nellie Murphy by the defendant. The evidence discloses that Nellie Murphy had at one time during her married life lived apart from her husband in the home of Mrs. Carroll, her sister, and the mother of this defendant; that, after leaving the home of Mrs. Carroll, Nellie Murphy lived for about one year and five months with the defendant, and then went to live with her husband; that she continued to live with her husband for a period of about ten years, and until the 14th day of August, 1909, when she went to her sister, a Mrs. Moylan, and asked the latter to keep her; that Mrs. Moylan refused to do so, but advised her to return to her husband; that Nellie Murphy then requested Mary Graham, Mrs. Moylan's daughter, to keep her, and, on the latter refusing, said there was only one other place, and that was the home of the defendant; that Nellie Murphy went to the home of the defendant of her own motion, after her other relatives had refused to harbor her, and continued to reside with the defendant until the 23d day of December, 1909, when she was taken to a hospital, where she subsequently died on the 12th day of January, 1910; that on the 20th day of August, 1909, Nellie Murphy accompanied the defendant to the Brooklyn Savings Bank, where a deposit of $1,095.34 standing in the name of Nellie Murphy was transferred to the defendant, who subsequently drew upon the account, until it reached the sum of $839.76, which the plaintiff seeks to recover. The learned trial court found the facts in harmony with the evidence, and gave judgment dismissing the complaint upon the merits; and from this judgment the plaintiff appeals to this court.

[1] It is conceded upon this appeal that Nellie Murphy was not of unsound mind at the time of this transfer, but it is urged that the evidence establishes that she was old and in feeble health, and that the presumption grows out of the transfer of this money to the defendant that she must have been subjected to undue influence.

There is not a particle of evidence in the case from which it can be inferred that the defendant had any influence over Nellie Murphy. She went to several of her relatives, and asked to be taken in, and, when these refused her shelter, she declared that there was only one other place, and that was the home of this defendant, and there is not the slightest intimation in the evidence that the defendant invited her to her home, or that any one did this for her, and, so far as the evidence discloses, there is nothing to show that the defendant may not have contracted with this woman for her support, in consideration of the turning over of this bank account. It appears from the evidence, that the defendant did pay a hospital bill for Nellie Murphy, and there is nothing in the pleadings to indicate that the defendant ever asserted that there was a gift of this fund. The plaintiff alleged

that the transfer was made without consideration, and that it was brought about by undue influence. This was denied, and there is not a particle of evidence in the case to establish that the transfer was without consideration. Indeed, it is conceded that this aged and feeble woman went to the defendant for a home, and that she remained there until she had to be removed to a hospital, and that the defendant paid the hospital bill. The defendant was under no legal or moral obligation to accept Nellie Murphy into her family and to care for her. That was a duty resting upon the plaintiff in this action, though Nellie Murphy had a perfect legal right to contract for her own support if she saw fit, and the plaintiff, having elected to allege a transfer, without consideration, has not established a cause of action by showing that the transfer was made. He should have gone further and established that it was made without consideration.

Nellie Murphy was a woman 60 years of age, concededly of sound mind. She certainly knew what she wanted to do, for she deliberately determined to live apart from her husband, despite the advice of her own sister, who denied her a home, as did the sister's daughter. She had money of her own, and she had a right to make use of that money in support of herself if she desired to do so. The defendant took her into her own home, after other relatives had refused to harbor her; took her in at her own request, so far as the evidence discloses; and it is no uncommon thing for persons of advancing years to turn over their money or property to persons who are willing to support and maintain them. The defendant was not bound to assert an affirmative defense. She had a right to rely upon her denial of the material allegations of the complaint, and the plaintiff, having failed to show the facts on which his cause of action was predicated, had no right to judgment. There is nothing to show that the money was not transferred for a good and sufficient consideration.

[2] Certainly no one is bound to prove a consideration for the transfer of money in the lifetime of the parties, where there is nothing to show that the parties did not deal upon equal conditions. There was a fully consummated transaction during the lifetime of the parties. The defendant had control of the bank account and used from it while Nellie Murphy was still living, and while the latter was up and about the house and the streets of the city, where she was met and recognized by her friends, and the defendant had a perfect right to rely upon the ordinary rules of business and to call upon the plaintiff to establish the case alleged, as a condition of recovery.

The judgment appealed from should be affirmed, with costs. All concur.